[The Bank of North Carolina filed its petition in bankruptcy October 31, 1868, and November 5, 1868, was adjudged a bankrupt. Debts were proven, amounting to $312,180.84, on which dividends amounting in all to 100 per cent. were declared, leaving a surplus in the hands of the assignee of about $30,000. The question as to interest on the amount of the bank bills held by certain creditors was certified by the register to the district judge, and, on his deciding (Case No. 894) against the contention of the creditors, was appealed to this court.]

Thomas B. Keogh, for creditors.
A. S. Merrimon, for assignee.

[NOTE. For subsequent opinions in course of same litigation, see In re Bank of North Carolina, Cases Nos. 896 and 897.]

---

## Case No. 896.

### In re BANK OF NORTH CAROLINA.

[19 N. B. R. 164.]

District Court, E. D. North Carolina. June 8, 1879.

BANKRUPTCY—POWERS OF REGISTER.

[1. The bankruptcy act of March 2, 1867, (14 Stat. 519, § 4,) confers power upon the register to make all such orders as are proper to be made in any bankruptcy proceedings, except only such as the law provides in express terms, he shall not make, and such others as the law provides that the judge of the bankruptcy court shall make.]

[2. With these exceptions, wherever it is provided in the law that the court may exercise a power, the register to whom a case in bankruptcy has been referred may exercise that power,

unless some person having some interest in the estate of the bankrupt shall make some objection to the exercise thereof.]

[3. The register in bankruptcy has power to direct a sale of debts or choses in action belonging to or being a part of the bankrupt's estate, upon a proper application, if there be no objection made by a person or party having some interest in the proper distribution of the bankrupt estate.]

[4. On a charge that an application to the register for an order of sale of the bankrupt's estate was caused by an improper solicitation or interference of the register, the strict rules of evidence applicable to the trial of causes should not be applied; and, if the party making the charge examines the register, he is not bound by the register's answers, so as to be precluded from offering other evidence, though such evidence may be offered to impair the force of his testimony, or even to contradict him.]

[5. The register to whom a case has been referred may, in case of delay in winding up the bankrupt estate, properly inquire why a settlement has not been made, suggest the propriety of making progress, and indicate what steps the assignee should take.]

[In bankruptcy. The assignee of the Bank of North Carolina, having applied for and obtained from the register an order for a sale of certain choses in action belonging to the estate of the bankrupt, which "could not be collected without inconvenient delay or expenses," now moves to expunge the order from the records on the ground that the register had no power to make such order. Denied.]

Merrimon, Fuller & Ashe, for assignee.
Tourgee, Reade & Battle, for respondents, (purchasers at sale.)

BROOKS, District Judge. There is but a single question presented by this motion, made by the solicitors for the assignee. They ask that the order heretofore granted upon the petition of the assignee for the sale of choses in action, belonging to the estate of the bankrupt corporation, be rescinded or revoked. This motion is made and filed, in writing, in conformity with the practice of the court, in which is set forth the reasons for which they ask that the order of sale shall be revoked. Whether the order the assignee now asks should be granted, depends upon the power vested by law in the register, to whom this case had been referred, to make the order which they now say should be annulled. It is insisted, in support of this motion, that Mr. Register Shaffer had no power to consider the application of the assignee or to make the order referred to. This question has been fully and ably argued by counsel, and carefully considered.

I conclude that the register in bankruptcy, has power to direct a sale of debts or choses in action belonging to or being a part of the bankrupt's estate, upon a proper application, if there be no objection made by a person or party having some interest in the proper distribution of the bankrupt estate. It does not appear that any opposition was offered or expressed by any party to the entry of the or-

der complained of. I have so concluded, for the following reasons:

First.—It has been the practice in this district for the register to hear these petitions and make such orders,—a practice so invariable as to be almost without exception; for, of the thousands of such orders as have been entered in bankruptcy proceedings in the district under the existing law, probably not more than eight or ten were ever considered or signed by me; and these were only so considered because I was, at the time, more accessible than the register to the assignee or their counsel, who desired such orders, and only for their convenience.

Second.—I am persuaded that such has not only been the practice in this district, but that it has been the almost invariable practice in every other district in the United States.

Third.—It is clear, I think, that the power is intended to be conferred (and in fact is conferred) by the law upon the register to make all such orders as are proper to be made in any bankruptcy proceedings, except only such as the law provides in express terms he shall not make, and such others as the law provides that the judge of the bankruptcy court shall make. Keeping these exceptions in view, wherever it is provided in the law that the court may exercise a power, the register to whom a case in bankruptcy has been referred may exercise that power, unless some person, having some interest in the proper distribution of the estate of the bankrupt, shall make some objection to the exercise thereof.

That a register in bankruptcy is not such a mere clerk, or servant, of the district judge as the counsel for the assignee insists he is, may be (at least) inferred from one of the qualifications required. I refer to the provisions of section 4994 of the Revised Statutes, which declares that "no person shall be eligible for appointment as register in bankruptcy unless he is a counsellor of the district court for which he is appointed, or of some one of the courts of record of the state in which he resides." Now if it was intended that the register should perform the duties of a clerk, merely, and had no power to do more than make calculations, and write that which the judge may direct, it would strike every lawyer at once that the requirement, that the register should be a lawyer, was not only useless and senseless, but one positively detrimental to the prompt progress of the business of the court (and I might add) to the comfort of the district judge. If a clerk only was required to write and compute figures quickly and correctly, I am sure that no judge of my experience would be apt to prefer lawyers as a class for that service, for we all know that lawyers, as such, are not distinguished for the legibility of their penmanship. What, then, was the object of the requirement, if it was not that the register is designed (as I hold the law

declares he is) an assistant of the district judge? If the power was not with the register to examine such an application when filed in a cause pending before him, and to grant the order in any case in which there is no objection made, I can scarcely see what a register may properly do that may not be as well done, and perhaps better, by others than lawyers as a class.

I will remark here that the charge made by the counsel for the assignee, that the application for the order of sale was caused by any improper solicitation or interference of the register, I do not regard as sustained by the record, and certainly is not sustained by the testimony offered in support of this motion. The counsel for the assignee, when they offered to examine the register, stated that they were conscious that they would be bound by his answers as a witness tendered by them. If it had become pertinent as a question in this proceeding, I would not have agreed with the counsel in that opinion. Certainly they would be bound by his answers if that was the only evidence offered; but in my opinion they would not, in this case, have been so bound by his answers as to be precluded from offering other evidence, though such evidence may be offered to impair the force of his testimony, or even to contradict it. The strict rule applicable to the trial of cases generally, I think, should not be observed in cases of this nature; and if I should confine myself to the record evidence, and the testimony offered in this case (as I believe I must do if I perform my duty properly), then I must say that I see nothing which I believe would justify me in declaring that the assignee had been improperly influenced to file his application. It is a grave charge to make against any public officer that he has acted corruptly in the performance of, or when pretending to perform any official duty. Certainly no court should so declare unless such charge should be fairly shown to be true. The Bank of North Carolina was declared bankrupt in 1868, and the case was, by order of this court, referred to this register. Soon thereafter the meetings of the creditors, provided by law, were held, and Chas. Dewey was duly chosen assignee. Distinguished and able counsel of his own choice were assigned him by the court. Then nine years passed by. At the end of that time the estate was not settled; the assets are not fully distributed. It appears to me that it was quite time that some one should inquire why a final settlement had not been made. Must the district judge make that inquiry? I think he might do so without violating any rule of propriety. Could the register, to whose supervision the case had been referred, make this inquiry and even suggest the propriety of some progress—more than that. make some suggestion as to what the assignee should do? I hold that he may properly do all this. Has he done more? If so, it has not been shown. The motion to ex-

punge the order of sale made by the register in this case is denied.

[NOTE. For other opinions in cases involving the same bankrupt estate, see In re Bank of North Carolina, Cases Nos. 894, 895, and 897.]